## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BARCLAYS CAPITAL INC.,    :
    :
    Plaintiff,    :
    :
    v.    :    CIVIL ACTION NO.
    :    1:16-CV-173-RWS
WILLIAM THOMAS PAIR,    :
    :
    Defendant.    :
    :
    :
    :

## ORDER

This case comes before the Court on Plaintiff Barclays Capital Inc.'s

Petition to Confirm Arbitration Award [1] and Defendant William Pair's

Motion to Vacate Arbitration Award and Opposition to Motion to Confirm [8].

After reviewing the record, the Court enters the following Order.

### Background

This case is about a dispute over a promissory note between Plaintiff

Barclays Capital Inc. ("Barclays") and Barclays' former employee, Defendant

William Pair. The parties arbitrated their dispute before a Financial Industry

Regulatory Authority ("FINRA") arbitration panel, and Barclays won.

Barclays now asks the Court to confirm its arbitration award; Mr. Pair asks the Court to vacate it.

Mr. Pair joined Barclays as an Investment Representative on September 23, 2010. When he joined the firm, Barclays provided Mr. Pair with a loan ("Original Note") in the amount of $1,040,000 to be forgiven in annual installments of $148,571.43 over seven years as long as Mr. Pair remained employed by Barclays. (Employment Agmt., Dkt. [9-1] at 3.) If his employment ended before the end of the seven year period, Mr. Pair was to repay Barclays any unforgiven principal as of the date of his termination, plus interest. (Id.) Mr. Pair's employment agreement contains the following arbitration provision:

> You and Barclays mutually agree that any dispute or controversy arising under or in connection with this offer letter or your employment, including your compensation or the termination of your employment, shall be settled by arbitration before FINRA, in accordance with its rules as then in effect.

(Id.) Mr. Pair signed the employment agreement and accepted his position on September 15, 2010. (Id. at 4.)

On December 6, 2010, Barclays sent Mr. Pair a letter ("New Loan Letter") explaining that he was eligible to participate in a "New Loan Program"

2

whereby his Original Note with Barclays would be replaced with a different

loan ("New Note") between Mr. Pair and a different entity—Barclays Bank,

PLC ("Bank"). (New Loan Letter, Dkt. [9-2] at 2.)  This New Note with the

Bank was similar to the Original Note in that Barclays agreed to make Mr.

Pair's annual payments as long as he remained employed with the firm. (Id.)

Other terms, however, would change with the New Note.  Most importantly,

the New Loan Letter explained that, unlike the Original Note, any dispute with

the Bank over the New Note would *not* be subject to arbitration:

> To be clear, the Bank is not your employer and does not have any
> authority or control over any aspect of your employment or
> continued employment by Barclays, nor is the Bank a member of
> the Financial Industry Regulatory Authority ("FINRA").
> Accordingly, any disputes between you and the Bank, including
> any disputes arising out of or relating to the New Loan, are not
> subject to FINRA arbitration but rather will be adjudicated in an
> appropriate court of law.  On the other hand, any and all disputes
> that may arise between you and Barclays remain subject to FINRA
> arbitration, and will therefore be the subject of a separate
> proceeding.

(Id. at 3.)  On December 15, 2010, Mr. Pair signed the New Loan Letter,

indicating his acceptance of the offer.  (Id. at 4.)  He signed the New Note itself

on the very next day.  (New Note, Dkt. [9-3].)

The New Note contains several provisions essential to this case.  First, it

3

contains the following choice of law and forum selection clauses:

> 10.    <u>Governing Law</u>: This Note and the indebtedness evidenced thereby shall be governed by the laws of the State of New York without regard to conflicts principles.
>
> 11.    <u>Jurisdiction</u>: The Borrower expressly agrees that any and all actions to enforce the terms of this Note shall be litigated only in the state or federal courts sitting in the State and County of New York and in no other, and Borrower hereby consents to the jurisdiction of said courts.

(<u>Id.</u> ¶¶ 10-11.)  The New Note also contains an indemnification provision:

> 6.    <u>Indemnification</u>: The Borrower further promises to pay and indemnify the Bank for all expenses incurred, including attorneys' fees, in connection with the collection of any amount due under this Note.  The amount the Borrower may be liable for under this paragraph shall be the greater of the actual expenses incurred by the Bank or 15% of the unpaid balance of the Note at the time any proceedings are instituted for collection.

(<u>Id.</u> ¶ 6.)  Finally, the New Note contains a "Transferability" provision saying

that it will "be binding on and inure to the benefit of the Bank and its

successors and assigns."  (<u>Id.</u> ¶ 9.)

In becoming a registered representative with Barclays, Mr. Pair also

signed a Form U4.  There, he agreed to "arbitrate any dispute, claim or

controversy that may arise between me and my firm, or a customer, or any other

4

person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [self-regulatory organizations] indicated in Section 4." (Form U4, Dkt. [9-4] § 15A ¶ 5.) In Section 4, FINRA was one of many SROs that Mr. Pair indicated. (Id. § 4.)

Barclays terminated Mr. Pair's employment on January 7, 2014. At that time, $594,287.71 in principal remained outstanding on the New Note. One day after Mr. Pair's termination, the Bank assigned to Barclays "all rights, claims, demands, and causes of action of any kind whatsoever that [the Bank] has or may have against Thomas Pair in connection with, but not limited to, the [New Note]." (Assign., Dkt. [8-5].) Barclays demanded that Mr. Pair immediately pay the amount due under the New Note, but Mr. Pair refused.

On May 12, 2014, Barclays filed an arbitration against Mr. Pair with FINRA Dispute Resolution. On July 28, 2014, Mr. Pair filed an answer denying Barclays' claim on the New Note and asserting thirteen different counterclaims. Those counterclaims related in large part to Mr. Pair's allegation that he was wrongfully terminated and included, among other claims, wrongful discharge, breach of contract, and fraudulent inducement. (See generally Pair's Answer and Counterclaims, Dkt. [9-7].) They also included a

5

claim for a declaratory judgment that the New Note was void and unenforceable. (Id. at 11.) Four months later, Mr. Pair submitted a motion to the Director of FINRA Arbitration arguing that Barclays' claim on the New Note was not subject to FINRA arbitration. (See Pair's First Mot. to Dismiss, Dkt. [9-8].) The FINRA Director denied Mr. Pair's motion and ordered the arbitration to proceed. (Director's Denial, Dkt. [9-10].)

The arbitration hearing took place before a panel of arbitrators ("Panel") in Atlanta from November 9-12, 2015. At the hearing, Mr. Pair again disputed whether Barclays' claim on the New Note was subject to FINRA arbitration in two ways. First, he refused to file a properly executed submission agreement. (Arbit. Award, Dkt. [9-14] at 4.) Second, he filed a Motion to Dismiss, arguing again that Barclays had improperly filed its claim with FINRA and that, under the express terms of the New Note, jurisdiction over the dispute was only proper in the state and federal courts in New York. (See Pair's Second Mot. to Dismiss, Dkt. [9-11].) After considering Mr. Pair's motion, the Panel denied it. (Jan. 29, 2015 Panel Order, Dkt. [9-12].) Mr. Pair also moved to amend his answer and counterclaims to add a claim that the New Loan Program misled the Securities and Exchange Commission ("SEC") or violated its net capital rules.

6

(Pair's Mot. to Amend, Dkt. [9-13].) The Panel denied that motion as well, finding that a net capital claim against Barclays was not viable. (Jan. 29, 2015 Panel Order, Dkt. [9-12].)

During the evidentiary hearing, Barclays moved to exclude evidence relating to that disallowed net capital claim. In particular, Barclays asked the Panel to exclude the testimony of Mr. Pair's witness—Gerard LaRocca—who signed the assignment of the New Note from the Bank to Barclays. (Hearing Trans., Dkt. [8-7] at 11:17-23.) According to Barclays, Mr. LaRocca's testimony was not relevant to any disputed issue and Mr. Pair only wanted to call Mr. LaRocca to elicit testimony about his net capital allegations. The Panel, agreeing with Barclays, found that "although [Mr. LaRocca] may have signed that assignment in this case . . . he really has nothing to contribute to any issues before this panel," and excluded his testimony. (Id. at 19:50-20:5.)

The Panel ultimately issued an award in favor of Barclays. It awarded $594,287.71 in outstanding principal, $19,281 in accrued interest, and $360,000 in attorneys' fees. (Arbit. Award, Dkt. [9-14] at 5.) The Panel also denied Mr. Pair's counterclaims in their entirety. (Id.)

Barclays filed its Petition to Confirm Arbitration Award [1] in this Court

7

on January 19, 2016.  Mr. Pair opposes confirmation of the award, and brings a

Motion to Vacate Arbitration Award and Opposition to Motion to Confirm [8].

## Discussion

### I.    Legal Standard

The Federal Arbitration Act ("FAA") provides that a party to an

arbitration may apply to a district court for an order confirming an arbitration

award.  See 9 U.S.C. § 9.  The court must then confirm the award "unless the

award is vacated, modified, or corrected as prescribed in" the statute.  Id.

Section 10(a) provides the four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  "The party challenging the arbitration award bears the burden

of asserting sufficient grounds to vacate the award." <u>Aldred v. Avis Rent-A-Car</u>, 247 F. App'x 167, 169 (11th Cir. 2007); <u>see also</u> <u>Riccard v. Prudential Ins. Co.</u>, 307 F.3d 1277, 1289 (11th Cir. 2002) ("The burden is on the party requesting vacatur of the award to prove one of [the] four [statutory] bases [under the FAA].").

## II.    Analysis

Mr. Pair challenges three aspects of the Panel's award.  First, he argues that the dispute over the New Note was not arbitrable and that the Court—not the Panel—should be the one to decide that.  Second, he argues that the Panel is "guilty of misconduct" for refusing to hear evidence in the form of Mr. LaRocca's testimony.  Finally, he argues that the Panel exceeded its powers and manifestly disregarded the law by awarding Barclays $360,000 in attorneys' fees.  The Court addresses each of these issues below.

Mr. Pair first argues that the Court should vacate the award because the dispute over the New Note was not subject to FINRA arbitration in the first place.  Arbitration "is simply a matter of contract between the parties." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 943 (1995).  As a result, "a party cannot be required to submit to arbitration any dispute which he has not

9

agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1112 n.20 (11th Cir. 2004) ("If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it."). When parties dispute whether they agreed to arbitrate a specific issue, a preliminary question arises: *who decides* whether the parties so agreed? See First Options, 514 U.S. at 942. In other words, who decides the question of arbitrability?

The default rule is that courts should decide that question. Supply Basket, Inc. v. Global Equipment Co., Inc., 1:13-CV-3220-RWS, 2014 WL 2515345, at *2 (N.D. Ga. June 4, 2014). The reason for that rule is simple: "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." First Options, 514 U.S. at 942. But because arbitration is ultimately a matter of contract, "[t]he parties may . . . overcome the default rule 'by agree[ing] to submit the arbitrability question itself to arbitration.'" Regal Lager, Inc. v. The Baby Club of Am., Inc., 1:06-CV-092-JEC, 2006 WL 3388435, at *3 (N.D. Ga. Nov. 21, 2006) (quoting First Options, 514 U.S. at 943). Courts must be careful, however, and "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r]

and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944 (quoting AT&T Techs., 475 U.S. at 649); see also Prudential Securities, Inc. v. Emerson, 905 F. Supp. 1038, 1044 (M.D. Fla. 1995) (analyzing whether there was a "clear, unequivocal agreement to submit the issue of arbitrability to the arbitrators.").

Mr. Pair largely skips over the preliminary question of whether he agreed to arbitrate arbitrability. He summarily denies doing so and states that, as a result, the Court should decide that question for itself. (Pair's Br. in Support of Mot. to Vacate ("Pair's Br."), Dkt. [8-1] at 16-17.) Barclays, on the other hand, argues that the parties agreed to submit questions of arbitrability to FINRA arbitration by incorporating FINRA's rules into Mr. Pair's employment agreement and his Form U4. (Barclays' Br. in Opp'n to Pair's Mot. to Vacate ("Barclays' Resp. Br."), Dkt. [9] at 14-15.)

Mr. Pair's brevity on this issue is understandable. Other than the New Note itself, it is not clear that any of the agreements between Barclays and Mr. Pair are relevant. Barclays filed the arbitration against Mr. Pair to collect on the New Note alone, an agreement that is devoid of any mention of arbitration. In fact, the New Note contains a forum selection clause that, in effect, prohibits

arbitration: "The Borrower expressly agrees that any and all actions to enforce the terms of this Note shall be litigated only in the state or federal courts sitting in the State and County of New York and in no other." (New Note, Dkt. [8-4] ¶ 11.)  The New Note also contains a merger clause, which says that "[t]his Note constitutes the entire agreement between the parties." (Id. ¶ 14.)  Given the merger clause, it is difficult to imagine how any other agreements are relevant to disputes arising out of the New Note.  And it is doubly difficult to imagine how Mr. Pair could have unequivocally agreed to arbitrate arbitrability in an agreement that does not mention arbitration at all.

Barclays argues that Mr. Pair agreed to arbitrate arbitrability by incorporating FINRA's rules into his employment agreement and his Form U4. In his employment agreement, Mr. Pair agreed to "arbitration before FINRA, in accordance with its rules as then in effect." (Employment Agmt., Dkt. [9-1] at 3.)  And in his Form U4, Mr. Pair "agree[d] to arbitrate any dispute . . . that is required to be arbitrated under the rules . . . of the SROs indicated in Section 4." (Form U4, Dkt. [9-4] §15A ¶ 5.)  Section 4 then lists FINRA as one of many SROs. (Id. § 4.)  The Court will assume, for the sake of argument, that those provisions successfully incorporate FINRA's Rules into the agreements.

12

It is true that the incorporation of arbitration rules that empower an arbitrator to decide the issue of arbitrability can constitute "clear and unmistakable evidence" of an agreement to arbitrate arbitrability. See Termininx Intern. Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."). But here, Barclays' incorporation argument is unpersuasive. Barclays begins by arguing that, by incorporating FINRA Rules, the parties incorporated FINRA Rule 13413, which says that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code." Barclays then cites to several cases holding that the language of Rule 13413 confers the question of arbitrability on FINRA arbitrators. See FSC Secs. Corp. v. Freel, 14 F.3d 1310 (8th Cir. 1994); PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996); Banus v. Citigroup Global Markets, Inc., No. 09 Civ. 7128(LAK), 2010 WL 1643780 (S.D.N.Y. Apr. 23, 2010). Because of a crucial distinction, however, none of those cases compel the same holding here.

13

Freel arose out of a dispute between a brokerage firm and two of its clients over the firm's bad investing advice. Freel, 14 F.3d at 1311. Because the firm was a member of the National Association of Securities Dealers ("NASD"), it was required to submit the clients' claims to arbitration. Id. The parties then executed submission agreements acknowledging that the NASD Code of Arbitration Procedure ("NASD Code") would govern the arbitration. Id. Later, the firm filed a motion to dismiss the clients' claims, arguing that they were barred by a section of the NASD Code that creates a six-year limitations period for any claims. Id. The panel denied the motion and ultimately rendered an award in the clients' favor. Id.

On appeal to the Eighth Circuit, the firm argued that the arbitrators exceeded their powers by deciding claims that were, in light of the six-year limitations provision, not eligible for submission to arbitration. Id. The Eighth Circuit disagreed, citing NASD Code section 35, which says—with language nearly identical to FINRA Rule 13413—"[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code."[1] Id. at 1312. The Eighth Circuit reasoned that, by agreeing to have the

---

[1] Again, for easy comparison, FINRA Rule 13413 says that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code."

arbitration governed by the NASD Code, the parties "clear[ly] and unmistakabl[[y]" adopted NASD Code section 35. Id. at 1312-13. That, in turn, meant they agreed to let the arbitrators decide whether the six-year limitations provision barred the clients' claims. Id. at 1313. In other words, the parties agreed to submit the arbitrability question (whether the clients' claims were time barred) to the arbitrators.

In PaineWebber, the facts were nearly identical to those in Freel, and the court relied on Freel to reach the same result. See PaineWebber, 81 F.3d at 1193. The only difference between the two cases is that in PaineWebber, the Second Circuit found that the parties did *not* incorporate the NASD Code into their arbitration agreement. Id. at 1201. Nonetheless, it went on in dicta to decide that, even if the parties *had* incorporated the NASD Code, section 35 committed the applicability of the NASD Code's six-year limitations period to the arbitrators. Id.

Finally, in Banus, the dispute arose out of a situation much like the one here: after terminating one of its financial consultants, the defendant attempted to collect the principal remaining on the plaintiff's forgivable promissory note. Banus, 2010 WL 1643780, at *1-2. On the eve of arbitration, the plaintiff's

15

counsel informed the arbitrators that he was in the process of filing a class action against the defendant on the plaintiff's behalf. Id. at *4. He then argued that FINRA Rule 13204, which prohibits the arbitration of any claim that is raised in a class action involving the same facts and defendants, mandated a stay of the arbitration. Id. The arbitrators denied the stay, finding that the circumstances fell beyond the bounds of those contemplated by FINRA Rule 13204. Id.

Then, in the district court, the plaintiff argued that the arbitrators lacked jurisdiction because the panel should have stayed the arbitration under FINRA Rule 13204. Id. at *4-5. The court rejected that argument, noting that FINRA Rule 13413—the same provision that Barclays invokes here—"clearly and unmistakably evinces the parties' intent to submit to arbitration disputes over arbitrability *that turn on interpretations of provisions of the Code*." Id. at *6 (emphasis added). Because the arbitrability of the dispute turned on the applicability of FINRA Rule 13204, FINRA Rule 13413 conferred the arbitrability decision on the arbitrators.

None of the cases discussed above hold that the language of Rule 13413, standing alone, empowers FINRA arbitrators to decide arbitrability. Instead, in

16

all three cases, arbitrability turned on the interpretation of a *different* rule. In

Freel and PaineWebber, that different rule was the NASD Code's six-year

limitations period; in Banus, it was FINRA Rule 13204. And because Rule

13413—or, in the case of Freel and PaineWebber, the identical provision in the

NASD Code—conferred the task of interpreting those *different* rules on the

arbitrator, the arbitrator was implicitly empowered to decide arbitrability.

Here, by contrast, arbitrability does *not* turn on the interpretation of a different

FINRA rule, so the interpretive authority found in Rule 13413 has no bearing

on whether the dispute over the New Note was arbitrable. In short, the

incorporation of Rule 13413 in the agreements in *this* case falls short of "clear

and unmistakable" evidence that Mr. Pair and Barclays agreed to arbitrate

arbitrability.

Barclays also cites a few cases where courts held that, by agreeing to

arbitration under the American Arbitration Association's ("AAA") rules, the

parties agreed to arbitrate the issue of arbitrability. See, e.g., Supply Basket,

2014 WL 2515345; Terminix, 432 F.3d at 1327. Those cases are likewise

inapplicable to this case. In both Supply Basket and Terminix, the parties

expressly incorporated AAA's rules into their agreements. See Supply Basket,

17

2014 WL 2515345, at *1; Terminix, 432 F.3d at 1332. One of those rules, AAA Rule 8, says that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Supply Basket, 2014 WL 2515345, at *3; Terminix, 432 F.3d at 1332. But unlike Rule 8 of the AAA Rules, FINRA Rule 13413 does not expressly empower FINRA arbitrators to determine the scope of their own authority. Instead, it merely gives FINRA arbitrators the authority to interpret *other* FINRA rules. So again, where arbitrability does not depend on the interpretation of another FINRA Rule—as is the case here—the incorporation of FINRA Rule 13413 says nothing about whether the parties agreed to arbitrate arbitrability.

In sum, the parties "did *not* agree to submit the arbitrability question itself to arbitration." First Options, 514 U.S. at 943. Because of that, "the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." Id.

When deciding whether parties agreed to arbitrate a dispute, courts should apply ordinary state-law principles that govern the formation of contracts. Dasher v. RBC Bank (USA), 745 F.3d 1111, 1116 (11th Cir. 2014).

18

As discussed above, the New Note is the central agreement here because that is the agreement that Barclays is trying to enforce. The New Note contains a "governing law" provision saying that "[t]his Note and the indebtedness evidenced thereby shall be governed by the laws of the State of New York without regard to conflicts principles." (New Note, Dkt. [8-4] ¶ 10.) So the Court will apply contract formation principles under New York law to decide if the parties agreed to arbitrate the dispute over the New Note.

Under New York law, in interpreting the terms of a contract, "it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." Brown Bros. Elec. Contractors, Inc. v. Beam Const. Corp, 361 N.E.2d 999, 1001 (N.Y. 1977). "[W]here the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language." R/S Assocs. v. New York Job Dev. Auth., 771 N.E.2d 240, 242 (N.Y. 2002). Here, there is no doubt that the parties did *not* agree to arbitrate disputes arising out of the New Note. The New Note's language is clear, unequivocal, and unambiguous: "*any and all actions* to enforce the terms of this Note shall be *litigated only* in the state or federal courts sitting in the State and County of New York *and in no other*."

19

(New Note, Dkt. [8-4] ¶ 11 (emphasis added).)  Reviewing that language independently, the Court finds no evidence that Mr. Pair agreed to arbitrate the dispute over the New Note before a FINRA panel.

To be sure, Barclays insists that other provisions trump the clear forum selection clause in the New Note.  But even taking those other provisions into account, and even considering the broad rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), the Court's finding remains the same.

Barclays first points to what it calls Mr. Pair's "regulatory obligation" to arbitrate under FINRA Rule 13200(a), which says:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> [1] Members;
>
> [2] Members and Associated Persons; or
>
> [3] Associated Persons.

FINRA, CODE OF ARBITRATION PROCEDURE § 13200(a).  Assuming the dispute here falls within the bounds of FINRA Rule 13200(a), the problem with Barclays' argument is that obligations to arbitrate under FINRA Rules "can be superseded and displaced by a more specific agreement between the parties." UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319, 328 (4th Cir. 2013); see also Credit Suisse Secs. (USA) LLC v. Tracy, 812 F.3d 249, 256 (2d Cir. 2016) ("Our decisions addressing a conflict between a [self-regulating organization's] broad arbitration rules and a specific pre-dispute agreement between a [self-regulating organization] member and an employee or customer hold that the more specific agreement will prevail.").

In this case, the New Note is just such an agreement.  Its forum selection clause is unequivocal: "any and all actions to enforce the terms of this Note shall be litigated only in the state or federal courts of the State and County of New York and in no other."  (New Note, Dkt. [8-4] ¶ 11.)  The fairest reading of that clause is that any attempt to enforce the New Note would *not* be arbitrable, even in light of the assignment from the Bank to Barclays.  See S. Telecom, Inc. v. TW Telecom of Georgia  L.P., 741 S.E.2d 234, 238-39 (Ga. Ct. App. 2013) ("[A]n assignee 'stands in the shoes' of the assignor and obtains

21

no greater rights than the assignor possessed at the time of the assignment.").

Thus, any obligation imposed on Mr. Pair by FINRA Rule 13200(a) is

superseded by the forum selection clause in the New Note.  See Tracy, 812

F.3d at 255-56.

Barclays next points to the arbitration clauses in Mr. Pair's employment

agreement and his Form U4, as well as the statement in the New Loan Letter

that "any and all disputes that may arise between you and Barclays remain

subject to FINRA arbitration." (New Loan Letter, Dkt. [8-3] at 3.)  Again, the

Court finds that the forum selection clause in the New Note supersedes those

provisions.  See Wallace v. Bock, 620 S.E.2d 820, 822 (Ga. 2005) ("An

existing contract is superseded and discharged whenever the parties

subsequently enter upon a valid and inconsistent agreement completely

covering the subject-matter embraced by the original contract.").  As the most

recent agreement on where disputes over the New Note would be decided, the

forum selection clause in the New Note takes precedence over Mr. Pair's other

agreements to arbitrate.  Id.

To summarize: after an independent analysis of whether Mr. Pair agreed

to arbitrate the dispute over the New Note before a FINRA panel, the Court

22

finds that he did not.  As a result, the Panel exceeded its power in awarding

Barclays any damages under the New Note.  See Klay v. United Healthgroup,

Inc., 376 F.3d 1092, 1112 n.20 (11th Cir. 2004) ("If a dispute is nonarbitrable,

then an arbitrator necessarily exceeds his powers in adjudicating it."); Davis v.

Prudential Secs., Inc., 59 F.3d 1186, 1195 (11th Cir. 1995) ("[T]he attorneys'

fees issue was not submitted to the arbitrators, and the arbitrators therefore

exceeded their powers in deciding the issue." (citing 9 U.S.C. § 10(a)(4))).  But

as Barclays notes, Mr. Pair does not move to vacate the denial of his

counterclaims.[2]  Accordingly, the Panel's award is **VACATED in part and**

**CONFIRMED in part**.  It is **VACATED** as to the award of principal and

interest under the New Note and **CONFIRMED** as to the denial of Mr. Pair's

counterclaims.

In light of the findings above, the Court need not take up Mr. Pair's

argument that the Panel was "guilty of misconduct" in refusing to hear Mr.

LaRocca's testimony.  See 9 U.S.C. § 10(a)(3).  Even if that were true, the

---

[2] In its response brief, Barclays expressly argued that the Court should confirm
the award denying all of Mr. Pair's counterclaims because "Pair does not move to
vacate the Panel's denial of his counterclaims." (Barclays' Resp. Br., Dkt. [9] at 26.)
Mr. Pair did not respond to that argument in his reply brief.  The Court assumes,
therefore, that Mr. Pair does not disagree with Barclays' conclusion.

23

result here would be the same: the Court would vacate the Panel's finding in favor of Barclays on the New Note.

Similarly, the fact that disputes arising out of the New Note were not arbitrable drastically simplifies the analysis of Mr. Pair's final argument—that the Panel exceeded the scope of its powers in imposing attorneys' fees beyond what was permitted by the New Note's indemnity provision. In the award, the Panel found that "[Mr. Pair] is liable and shall pay to [Barclays] attorneys' fees in the amount of $360,000, *pursuant to the [New] Note.*" (Arbit. Award, Dkt. [8-12] at 5 (emphasis added).) Because that award was made "pursuant to the [New] Note," and because the New Note was not arbitrable in the first place, the Panel exceeded its powers in awarding those attorneys' fees. As a result, the award of $360,000 in attorneys' fees is also **VACATED**.

## Conclusion

As discussed above, Barclays' Petition to Confirm Arbitration Award [1] is **GRANTED in part and DENIED in part**. It is **GRANTED**, and the arbitration award is **CONFIRMED**, as to the denial of Mr. Pair's counterclaims. At the same time, Barclays' motion is **DENIED**, and the arbitration award is **VACATED**, as to the award of principal and interest under

24

the New Note, as well as the award of attorneys' fees.  Because Mr. Pair's

Motion to Vacate Arbitration Award and Opposition to Motion to Confirm [8]

only sought vacatur of the portions of the award vacated above, that motion is

**GRANTED**.  The Clerk is **DIRECTED** to close the case.

    **SO ORDERED**, this ⟋5⟍ day of March, 2017.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

25